IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, | ) ) ) | CV 11-101-M-DWM |
| Plaintiff, | ) ) | |
| vs. | ) ) | ORDER |
| STEVE WAYNE CAMP, | ) ) | |
| Defendant. | ) ) | |

## I. Introduction

Defendant Steve Wayne Camp ("Camp") was a licensed agent to sell Plaintiff American National Property and Casualty Company's ("American National's") insurance products. This relationship terminated on March 4, 2011.

In this breach of contract action, American National alleges Camp is in violation of the non-compete provision of their Agent Agreement, as well as his

requirement that he return all records and files. American National moved for an ex parte temporary restraining order and a preliminary injunction. The Court denied the motion for the temporary restraining order, finding no circumstances justified the issuance of an ex parte order. Order, July 18, 2011 (dkt #8). Before the Court now is American National's motion for preliminary injunction.

## II. Background

American National seeks a preliminary injunction that would prevent (1) Camp and his associates from soliciting or accepting any insurance within a twenty-five mile radius of his office from any American National policyholder he solicited or serviced while an agent of American National or (2) inducing any such policyholder to cancel or replace any American National insurance policy. It also seeks (3) to preliminarily enjoin Camp from using any American National accounts, records, policy files or client information, and (4) prevent him from spoiling such documents.

The relief sought is an enforcement of the terms in the parties' Agent Agreement (the "Agreement"). That Agreement was executed on January 4, 2007. At the hearing on this motion, American National presented testimony that the Agreement was signed by Camp, through his accessing the Agreement online and signing it by submitting personal information, such as his social security number.

A copy of the Agreement was entered into the record. In regards to the issue of non-solicitation and non-competition, the Agreement provides as follows:

> [Upon termination], the Agent will not directly or indirectly through any partner, Agent, employee, or firm on the Agent's behalf, solicit or accept any property or casualty insurance from any policyholder of the Company whose business they wrote, solicited, serviced, or sold while a representative of the Company.
>
> The Agent will not advise, induce, or attempt to induce any such policyholder to lapse, cancel, or replace any policy of the Company.
>
> These prohibitions shall last for a period of one year following the termination of this Agreement and shall be effective [within a twenty-five (25) mile radius of the Agent's office].
>
> Both parties agree that irreparable and incalculable injury may be done to the Company by violation of this Agreement. Therefore, in the event of breach of this policy rollover provision by the Agent, it is agreed that the Company may compel compliance by injunction or other remedy, including but not limited to money damages.

Agreement at 6 (dkt #6-1).

As to enjoining Camp's use and handling of American National's business records, the Agreement provides as follows:

> "Business" shall mean all accounts, records, policy files and client information maintained or in the possession of the Agent. Business includes all accounts, records, files, policies, rate books, information regarding names, addresses, and ages of policyholders; the description and location of insured property; and expiration or renewal dates (x-dates) of polices acquired or coming into the Agent's possession during the effective period of this Agreement or any prior Company Agreement. These are trade secrets wholly owned by the Company. All Company "Business" whether

> furnished by the Company or paid for in whole or part by the Agent, shall be sole and exclusive property of the Company and shall immediately be returned to the Company or a designated Company representative upon termination of this agreement or upon demand from the Company.

Id. at 3.

### III.  Legal Standard

Before the Court may grant a preliminary injunction, American National must establish "(1) that [it is] 'likely to succeed on the merits,' (2) that [it is] 'likely to suffer irreparable harm in the absence of preliminary relief,' (3) that the 'balance of equities tips' in [its] favor, and (4) that such an injunction is in the 'public interest.' " H & R Block Tax Servs. LLC v. Kutzman, 681 F.Supp.2d 1248, 1250 (D. Mont. 2010) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 21 (2008)).  This test can be satisfied by a showing of " 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff," so long as the other two elements are also met.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

### IV.  Analysis

**A.  Likelihood to Succeed on the Merits**

Camp admits that he is accepting business from clients he serviced while an agent of American National.  See, e.g., Def.'s Mot. to Continue at 2 (dkt #11)

("My agents and I are accepting business from [former] clients as they are rapidly contacting my office . . . ."). He argues, however, that American National is unlikely to succeed with its claims for two separate reasons.

First, Camp asserts he never signed or was aware of any non-compete provision. He testified that his supervisor at American National signed the Agreement by Camp providing him certain information that allowed the supervisor to execute the Agreement online. He insists the supervisor never informed him of the terms of the Agreement, or provided him a copy of it. In response, American National provided testimony that Camp himself executed the agreement in his supervisor's office, Camp had access to a copy of the executed Agreement through his online personnel file, and provided a copy of a modification to the Agreement that Camp admits he signed that referred to and enlarged the provisions of the non-compete clause.

Whether there is a valid contract supporting the non-compete provisions turns on a factual dispute to be fully determined at trial. At this time, however, given the evidence submitted by American National, with Camp only able to contest such evidence through his own testimony, the Court finds Camp likely signed, was or should have been aware of, and is subject to the terms of the Agreement.

In his second argument, Camp insists the non-compete provision is unenforceable. He bases this argument on Montana law that provides "[a]ny contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided for by 28-2-704 [sale of goodwill of business] or 28-2-705 [dissolution of partnership], is to that extent void." Mont. Code Ann. § 28-2-703. The Montana Supreme Court, however, interprets that statute to allow "reasonable restrictions on trade." Access Organics, Inc. v. Hernandez, 175 P.3d 899, 902 (Mont. 2008). Reasonableness turns on three factors:

> (1) It must be partial or restricted in its operation in respect either to time or place;
>
> (2) it must be [based] on some good consideration; and
>
> (3) it must be reasonable, that is, it should afford only a fair protection to the interests of the party in whose favor it is made, and must not be so large in its operation as to interfere with the interests of the public.

Id. (internal citations omitted).

The Court has recently addressed whether a non-compete provision is reasonable. In H & R Block Tax Services v. Kutzman, 681 F.Supp.2d 1248 (D. Mont. 2010), a franchisee agreed "she would not directly or indirectly compete with H & R Block within 45 miles of her franchise territory by preparing tax

returns or providing related services for one year following the termination of the agreement." H & R Block, 681 F.Supp.2d at 1249. The Court found the provision reasonable under Montana law because it was restricted in time and place, was based on good consideration, and afforded only fair protection. As to the third factor, the Court noted that restricting the franchisee from competing for one year within a 45-mile radius provided the franchise a fair opportunity to retain its goodwill and sell the franchises without unfair competition. Id. at 1251.

The restrictions involved here are much less burdensome than those in H & R Block. Camp is not prevented from selling insurance products, but instead only from selling insurance products to his former American National clients. Moreover, American National presented testimony that it has less than one percent of the market share in Montana, meaning Camp would remain free to sell insurance to ninety-nine percent of the Montana market. Not only is this non-compete provision limited in scope, it is also limited in both place and time, to twenty-five miles from his office for a period of one year, five months of which have already passed. Thus, the restrictions satisfy the first reasonableness factor under Montana law. As for the second consideration, Camp received good consideration in the form of "training, office support, publicity," and assistance in developing new customers, as part of the Agreement. Agreement at 6. Finally, the

limited restrictions afford only fair protection.  By limiting Camp only from involving himself with American National's policyholders for a limited time in a limited area, the restrictions provide American National reasonable protection from piracy of its customers without interfering with the interests of the public.  In sum, the provisions in question here are not unreasonable and thus enforceable under Montana law.

Accordingly, American National has demonstrated a likelihood of success on the merits.

**B.     Irreparable Harm**

To satisfy the irreparable harm requirement, American National must demonstrate it will suffer an imminent, continuing injury that could not be adequately remedied upon a final determination of the merits.  See Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009).  Injury to a company's goodwill is often difficult to calculate, thus constitutes an irreparable injury.  Rent-A-Center, Inc. v. Canyon Television & Appliance, 944 F.2d 597, 603 (9th Cir. 1991); see also Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc., 323 F.Supp.2d 525, 532 (S.D.N.Y. 2004) ("Generally, when a party violates a non-compete clause, the resulting loss of client relationships and customer good will built up over the years constitutes irreparable harm.").

Here, Camp has pirated American National's clients, and he appears likely to continue to do so in the absence of a preliminary injunction.[1] The Agreement identifies the harm from such conduct to be irreparable, see Agreement at 6, and for good reason. Camp's doing business with American National's policyholders erodes its operation, patronage, client relations, and good will. Calculating the harm to American National by Camp's violation of the non-compete clause is difficult to calculate and thus irreparable.

C. **Balance of Equities**

The severity of harm also tips in American National's favor. To allow Camp to further pirate American National's goodwill and clients will increase American National's damages that cannot easily be calculated. While the Court is mindful of the harm this restriction might have on Camp's business, such harm would stem from his own breach of the Agreement. Moreover, the harm is limited to the extent that Camp is not restricted from selling insurance products to individuals not associated with American National.

D. **Public Interest**

As this Court has previously noted, "[t]he public has an interest in valid

---

[1] At the hearing, Camp testified that if he cannot continue to solicit former clients his business would be negatively impacted.

contracts being upheld." H & R Block, 681 F.Supp.2d at 1253. It appears at this stage of the preceding that the Agreement and restrictions are valid. It is thus in the public's interest to enjoin Camp from violating the terms of the agreement until the matter can be fully resolved. Camp will be protected, if he ultimately prevails in this action, by the Court requiring American National to post a $100,000.00 security bond. See Fed. R. Civ. P. 65(c).

## V. Conclusion

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Injunction (dkt # 5) is GRANTED. Defendant Camp, his agents, employees, firms, and all other persons in active concert and participation with him are enjoined from directly or indirectly soliciting or accepting any property or casualty insurance within a twenty-five mile radius of Missoula, Montana from any American National policy holder whose business they wrote, solicited, serviced, or sold while a representative of American National. This restriction expires on March 3, 2012.

Defendant Camp is further enjoined within a twenty-five mile radius of Missoula, Montana, from advising, inducing, or attempting to induce any such policyholder to lapse, cancel, or replace any American National insurance policy.

This restriction expires on March 3, 2012.

Additionally, Defendant Camp is enjoined from using for any purpose American National trade secrets which include all accounts, records, policy files, and client information maintained or in the possession of Camp that came into his possession during the effective period of the Agreement. These records include all accounts, records, files, policies, rate books, information regarding names, addresses, and ages of policyholders; the description and location of insured property, and expiration or renewal dates (x-dates) of policies acquired. Defendant Camp is also prohibited from spoiling these identified records.

IT IS FURTHER ORDERED that Plaintiff shall provide a $100,000.00 security bond pursuant to Rule 65(c) F. R. Civ. P. within THREE (3) days of the entry of this Preliminary Injunction.

IT IS FURTHER ORDERED pursuant to Rule 26(d), a party may commence discovery immediately upon providing its Rule 26(a)(1) Initial Disclosure to opposing parties.

Finally, IT IS ORDERED that a Preliminary Pretrial Conference shall be set for **September 14, 2011**, at **2:15 p.m.** in the Russell Smith Courthouse, Missoula, Montana. An Order setting forth the deadlines for the pretrial conference shall be forthcoming.

Dated this 3ʳᵈ day of August, 2011, at 17:30 p.m.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT